UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-298-RJC
(3:13-cr-199-RJC-1)

| | |
|---|---|
| FRED CARRASCO, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

I.  BACKGROUND

Pro se Petitioner Fred Carrasco, Jr., sold large quantities of marijuana and cocaine in the area of Caldwell County, North Carolina. (Crim. Case No. 3:13cr199, Doc. No. 44 at 4-5: PSR). During a period of about six months, Petitioner sold approximately 1,179 kilograms of marijuana and approximately 640 grams of cocaine. (Id. at 5). Petitioner's marijuana customers included Ronnie Andrew Hamby, who sold marijuana to others. (Id. at 4-5). When law enforcement officers searched Hamby's house pursuant to a warrant, they found Petitioner with $9,937, including money that law enforcement officers had used to conduct a controlled buy from Hamby. (Id.). They also found, among other things, marijuana, cocaine, digital scales, six handguns, two assault rifles, and ammunition. (Id.).

Petitioner pleaded guilty in this Court, pursuant to a written plea agreement, to one count of conspiracy to distribute and possess with intent to distribute cocaine and marijuana, 21 U.S.C. §§ 846, 841(a)(1), and one count of possession of a firearm in furtherance of a drug-trafficking

offense, 18 U.S.C. § 924(c).  (Id. at 4).  The indictment specified that the first count "involved at least one thousand (1,000) kilograms of a mixture and substance containing a detectable amount of marijuana" and "at least five hundred (500) grams of a mixture and substance containing a detectable amount of cocaine."  (Id., Doc. No. 14 at 1-3: Indictment).

As part of his plea agreement, Petitioner admitted to "being in fact guilty as charged in Counts One and Four."  (Id., Doc. No. 22 at 1: Plea Agreement).  He also agreed that he was aware that count one carried a mandatory minimum prison sentence of ten years and that count four carried a mandatory consecutive minimum term of five years.  (Id. at 1-2).  The statutory maximum prison sentence for each count was life.  (Id.).  Petitioner explicitly agreed to "jointly recommend" with the Government that the Court find that "[t]he amount of a mixture and substance containing a detectable amount of marijuana that was known to or reasonably foreseeable by the Defendant was at least one thousand (1,000) kilograms but less than three thousand (3,000) kilograms, resulting in a base offense level of 32."  (Id. at 2).  Petitioner agreed to waive any right to contest his conviction or sentence on appeal or in a post-conviction action, except on grounds of ineffective assistance of counsel or prosecutorial misconduct.  (Id. at 5).  Both Petitioner and his attorney John Fischer signed the plea agreement, under which Petitioner received significant benefits.  (Id. at 8).  The Government agreed not to pursue an information under 21 U.S.C. § 851, which would have increased the mandatory minimum prison sentence on count one from 10 to 20 years.  (Id. at 2).  The Government also agreed to move to dismiss three additional drug and firearm counts with which Petitioner had been charged, which included a second offense under 21 U.S.C. § 924(c).  (Id. at 1; Doc. No. 14 at 1-3).

Magistrate Judge Cayer accepted Petitioner's guilty plea on January 7, 2014, after conducting the plea colloquy called for by Federal Rule of Criminal Procedure 11.  (Id., Doc.

No. 36 at 1-13, Tr. of Rule 11 Hearing). Petitioner was represented by the same attorney who signed his plea agreement, and the Court placed Petitioner under oath. (Id. at 2). The Government summarized the charges to which Petitioner was pleading guilty, explicitly noting that they included allegations that the drug charge "involved at least 1,000 kilograms of a mixture and substance containing marijuana" and "at least 500 grams of a mixture and substance containing a detectable amount of cocaine." (Id. at 4). After hearing that summary, Petitioner agreed that he fully understood the charges against him. (Id.). The Government also summarized the plea agreement, explicitly describing the parties' agreement "that the amount of a mixture and substance containing a detectable amount of marijuana that was known to or reasonably foreseeable by the defendant was at least 1,000 kilos, but less than 3,000 kilos resulting in a base offense level of 32." (Id. at 9). Petitioner affirmed, under oath, that he understood the terms described by the Government and agreed with them. (Id. at 11).

During the plea colloquy, Petitioner affirmed, under oath, that he was "in fact guilty" of the two counts to which he was pleading guilty. (Id. at 8). He affirmed that no one had "threatened, intimidated, or forced" him to enter a guilty plea. (Id. at 11). He affirmed that he had sufficient time to discuss with his attorney any possible defenses to the charges. (Id. at 12). He also affirmed that he was "satisfied with the services of [his] attorney." (Id.). When asked if he would like to say anything about the services of his attorney, Petitioner replied, "No." (Id.). After hearing from Petitioner and his attorney, Judge Cayer found Petitioner's guilty "plea to be knowingly and voluntarily made" and accepted it. (Id. at 13).

Eight months after he pleaded guilty, Petitioner sent a letter to this Court complaining about his attorney John Fischer. (Id., Doc. No. 30). Magistrate Judge Keesler conducted an attorney-inquiry hearing, and Petitioner's attorney explained that he had printed out copies of

3

discovery and statements and reviewed them in a way that he had understood was consistent with ordinary practice, noting that the applicable rules prohibited him from giving Petitioner copies of discovery. (Id., Doc. No. 37 at 6-7: Att'y Inquiry Hr'g.). Petitioner's attorney explained that he reviewed the plea agreement with Petitioner in detail, discussed the advantages and disadvantages of going to trial, discussed the potential consequences of the "851 enhancement which was not pursued as part of the plea agreement," and recommended that the plea was appropriate. (Id.). Petitioner told the Court that he had "no idea" whether his attorney "printed out parts of [his] discovery," but stated that his attorney "never showed [him] anything." (Id. at 7-8). Petitioner further stated that his attorney told him about a cooperating witness who had discussed a quantity of marijuana, but Petitioner told the Court that his attorney "never told [him] how much it was." (Id.). Petitioner stated that he "would have never signed the plea" if his attorney "had told me it was 20 pounds of weed for three months." (Id.).

Magistrate Judge Cayer replaced Petitioner's attorney with Aaron Michel, who—nearly two months after this Court's probation office prepared the final presentence report for Petitioner—on December 20, 2014, moved to withdraw Petitioner's guilty plea. (Id., Doc. No. 38). This Court denied that motion after applying the factors described by the Fourth Circuit in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), and concluding that Petitioner had failed to make the requisite showing of a fair and just reason for withdrawing his plea. (Id., Doc. No. 58 at 2-5: Sentencing Tr.).

This Court sentenced Petitioner to a term of imprisonment of 185 months. (Id., Doc. No. 58 at 29). That sentence was only five months longer than the applicable statutory mandatory-minimum prison term for Petitioner's two offenses. (Id. at 15; 28). Moreover, the sentence was within the range advised by the United States Sentencing Guidelines, which called for a prison

4

sentence between 120 and 125 months on count one, plus a sixty-month consecutive sentence on count four. (Id.). The Court of Appeals for the Fourth Circuit dismissed Petitioner's appeal, rejecting his argument that "counsel provided ineffective assistance by improperly advising him prior to his guilty plea." United States v. Carrasco, 619 F. App'x 248, 249 (4th Cir. 2015) (unpublished decision). Petitioner's timely motion under Section 2255 followed.

In support of his motion to vacate, Petitioner asserts three theories, all of which relate to the performance of his attorneys. First, he contends that his trial attorney was constitutionally deficient for omitting to file a motion to suppress before Petitioner pleaded guilty. (Doc. No. 1 at 4). Second, he contends that his guilty plea was unknowing and involuntary because his attorney misled him about discovery and informed him that he could dispute the drug quantity attributable to him at sentencing. (Id. at 5). Finally, Petitioner contends that the attorney who represented him on appeal was deficient for omitting to challenge this Court's denial of his motion to withdraw his guilty plea. (Id. at 7).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the argument presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**A. Petitioner's Claim of Ineffective Assistance of Trial Counsel.**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . .

6

. any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner first contends that his trial attorney was ineffective for failing to move to suppress certain statements that Petitioner purportedly made to officers before he pleaded guilty. Petitioner argues that his statements were "unconstitutionally obtained" because a "traffic stop" that law enforcement conducted before he gave them was "not based on probable cause" but was instead a "pretext." (Doc. No. 1 at 15). As to the specific, alleged illegal traffic stop, Petitioner asserts the following in his motion to vacate:

> On August 31, 2009, local law enforcement officers initiated a traffic stop of [Petitioner] in Charlotte, North Carolina purportedly driving on a revoked driver's license. However [Petitioner] had a valid Utah driver's license and was legally operating his niece's vehicle. Nevertheless, [Petitioner] was detained and taken in for questioning by FBI Task Force Agents . . . . [Petitioner] at some point invoked his right to counsel and was released without charges.
> On September 1, 2009, [Petitioner] was again detained after the vehicle he was riding in with other individuals was stopped by police. Agents . . . later claimed that [Petitioner] confessed to a variety of crimes, including trafficking 100 pounds of marijuana per week for six months and ½ kilogram plus 5 ounces of cocaine.

(Id. at 14). Petitioner contends that, before he pled guilty, he asked his attorney to file a motion to suppress statements he made to officers after the traffic stops, but that his attorney refused, and his attorney therefore rendered deficient performance. For the following reasons, Petitioner's contention fails.

First, Petitioner waived the right to challenge his conviction on this ground by pleading guilty. "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Pre-plea ineffective assistance of counsel about a matter that does not affect the voluntariness of the decision to plead guilty is such a nonjurisdictional defect. United States

v. Torres, 129 F.3d 710, 715 (2d Cir. 1997). Here, Petitioner does not contend that his attorney's failure to file a motion to suppress rendered his guilty plea unknowing or involuntary. Petitioner does contend that his guilty plea was unknowing or involuntary. However, he does not assert his attorney's omission to move to suppress as one of the grounds to support this contention. See (Doc. No. 1 at 5, 15-16). Moreover, Petitioner does not purport to explain how his attorney's omission to file a motion to suppress could have impaired his ability to understand the consequences of his guilty plea or the voluntariness of his decision to accept those consequences. Petitioner's guilty plea, therefore, waived any challenge to his conviction based on his attorney's omission to file a motion to suppress.

Next, even if Petitioner's guilty plea had not waived any challenge to his attorney's omission to file a motion to suppress, Petitioner has not established that the omission was objectively unreasonable. Petitioner bears the burden of establishing that his attorney's performance was constitutionally deficient, and an attorney is not ineffective for failing to raise meritless, or even long-shot, theories. United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014). Petitioner has not presented any evidence to overcome the presumption his attorney made a reasonable decision in determining that a motion to suppress was unwarranted. Finally, Petitioner is not entitled to relief based on his attorney's omission to file a motion to suppress because Petitioner has failed to establish a reasonable probability that he would have prevailed on such a motion. Accordingly, Petitioner has not met his burden to establish prejudice.

For the reasons stated herein, Petitioner's claim of ineffective assistance of trial counsel is denied and dismissed.

**B. Petitioner's Claim that His Guilty Plea was Unknowing and Involuntary.**

Petitioner next contends that his guilty plea was unknowing and involuntary because his attorney gave him deficient advice. (Doc. No. 1 at 5-6). Petitioner alleges that attorney Fischer, who negotiated Petitioner's plea agreement, informed Petitioner that Ronnie Andrew Hamby, one of Petitioner's marijuana customers, had given a statement to law enforcement officers "that [Petitioner] had sold him approximately 2,600 pounds of marijuana." (Id. at 14). Petitioner asserts that he "learned that Mr. Fischer had lied to him about the content of Hamby's statements" after his new attorney, "Mr. Michel[,] met with [Petitioner] and showed him the discovery material." (Id. at 16). According to Petitioner, he learned from attorney Michel that Hamby "did not claim [Petitioner] sold him 2,600 pounds of marijuana," but that, instead, "Hamby's statement claimed only 30 pounds per week for three months (approximately 360 pounds in total)." (Id.). Petitioner argues that the "primary reason [he] pled guilty was due to his belief that Hamby claimed the much higher quantity and would testify to same if the case went to trial." (Id.). Petitioner also alleges that Fischer told him that he would be able to contest the drug quantity for which he would be held responsible at sentencing and that he "did not understand" that he would be held responsible for certain quantities when pleading guilty. (Id. at 15).

Petitioner's challenge to the voluntariness and intelligence of his plea is denied. First, at Petitioner's sentencing, this Court already specifically rejected Petitioner's argument that his guilty plea was unintelligent and involuntary because "his former counsel had misinformed him," after the issue was briefed as part of Petitioner's motion to withdraw his guilty plea. (Id., Doc. No. 58 at 2-3). This Court reviewed the arguments and submissions by counsel and the record of Petitioner's plea colloquy and specifically found that Petitioner's guilty plea was "knowingly and voluntarily made." (Id.). Petitioner has not identified any circumstance, such as

9

a material change in the law, that would warrant relitigation of this issue in a motion under 28 U.S.C. § 2255. See Kaufman v. United States, 394 U.S. 217, 227 n.8 (1969).

Second, the theory is subject to a procedural bar, which Petitioner cannot overcome, because he failed to raise the theory on direct appeal. "[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998). To overcome this procedural bar, Petitioner would be required to demonstrate either cause and actual prejudice or that he is actually innocent. Id. at 622. Liberally construed, Petitioner's motion arguably contends that the allegedly deficient performance of his appellate counsel constitutes cause for Petitioner's procedural default.[1] (Doc. No. 1 at 6). This contention, however, is meritless. As explained below, the performance of Petitioner's appellate counsel was not constitutionally deficient. Nor could Petitioner establish prejudice because, as also explained below, no reasonable probability exists that a challenge to the voluntariness of Petitioner's plea would have been successful. And Petitioner does not contend that he is actually innocent. Accordingly, Petitioner cannot overcome his procedural default.

Finally, even if this Court were to consider the merits of Petitioner's allegations in support of his challenge to the voluntariness and intelligence of his guilty plea, Petitioner's allegations are contradicted by the record. At both the attorney-inquiry hearing and during his plea colloquy, Petitioner told the Court something different from what he now alleges in his motion to vacate, which he signed under penalty of perjury. Petitioner's allegation that Fischer affirmatively misrepresented the specific quantity that Hamby had discussed with law

---

[1] Petitioner confirms in his Reply that he does contend that appellate counsel's failure to raise the issue constitutes cause. (Doc. No. 7 at 7).

10

enforcement officers, "2,600 pounds of marijuana" (Doc. No. 1 at 14), differs significantly from what he told this Court during its October 2014 attorney-inquiry hearing. At that hearing, Petitioner complained that his attorney did not tell him the quantity that Hamby had discussed:

> He just told me there was a witness. He told me the name of the witness. He told me as to what — what he was talking about, marijuana. He never told me how much it was. If he had told me it was 20 pounds of weed for three months, I would have never signed the plea.

(Crim. Case No. 3:13cr199, Doc. No. 37 at 8).

Petitioner's statements at that hearing also contradict his allegation in his motion to vacate that he learned that Fischer had misrepresented Hamby's statements "at [the] point" that "Mr. Michel met with Petitioner and showed him the discovery material." (Doc. No. 1 at 16). At the time of the attorney-inquiry hearing, Michel had not yet been appointed. However, Petitioner already knew about Hamby's statement at that hearing, and used it to argue for appointment of a new attorney.[2] See (Id., Doc. No. 37 at 6 ("The witness himself says 240 pounds.")). Petitioner's allegations in the motion to vacate are, therefore, directly contradicted by the record, including Petitioner's own statements. See David v. United States, 134 F.3d 470, 477-78 (1st Cir. 1998) (court may reject allegations in support of a motion under section 2255 as

---

[2] Petitioner now contends, in his Reply to the Government's Response, that his assertion in his original motion to vacate—that he first became aware of the true drug quantity alleged by Hamby when attorney Michel showed him the discovery material—was an "inadvertent error made in the course of [Petitioner's] 2255 submission being typed up by the inmate law clerk who assisted him." [Doc. No. 7 at 8]. Petitioner concedes in his Reply that, he "in fact, . . . first learned the true drug quantity alleged by Hamby when he read the [PSR]." (Id.). The Court notes, first, that Petitioner signed the motion to vacate under penalty of perjury, asserting that the "foregoing is true and correct," and he cannot now absolve himself of responsibility for what he asserted in the motion to vacate based on the fact that another inmate "typed up" the motion to vacate. In any event, even allowing for Petitioner's contention that his assertion in his motion to vacate was an "inadvertent error," Petitioner's claim still fails for the reasons stated herein.

11

a matter of law when they "contradict the record or are inherently incredible") (internal quotation marks omitted)).

Petitioner's allegations are also contradicted by what he stated under oath during his plea colloquy. Petitioner's contention that, because of his attorney's advice, he "did not understand that by pleading guilty, he would be locked into being held responsible for certain minimum drug quantities" is directly contradicted by his statement during his plea colloquy that he understood that the plea agreement obligated him to recommend a specific drug quantity range, and that the charges to which he was pleading guilty included specific drug quantities. (Crim. Case No. 3:13cr199, Doc. No. 36 at 4-9). That information also appears in the plea agreement that Petitioner signed. Furthermore, if Petitioner's attorney had not previously explained that Petitioner was committing to particular drug quantity ranges by pleading guilty to the charges and as part of the plea agreement, Petitioner had the opportunity to express concern about his attorney's performance during his colloquy. Instead, however, Petitioner affirmed, under oath, that he was satisfied with his attorney's performance. (Id. at 12). Petitioner cannot obtain relief under 28 U.S.C. § 2255 based on allegations that contradict what he said under oath during his plea colloquy. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 222-23; see also United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003) (affirming a district court's rejection of a motion to withdraw a guilty plea based on a defendant's allegation that he lied during the plea colloquy).

Even if Petitioner had received objectively unreasonable advice, he would not be able to establish the prejudice required to escape his guilty plea. A defendant cannot show that an

12

attorney's deficient advice rendered his guilty plea involuntary or unknowing unless he can establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lockhart, 474 U.S. at 59. To meet this requirement, Petitioner must establish "both subjectively that he would have gone to trial and that it would have been <u>objectively reasonable</u> to do so." United States v. Santiago, No. 14-6449, 2015 WL 9288220, at *4 (4th Cir. Dec. 22, 2015) (emphasis in original) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)). Petitioner cannot establish "subjectively that he would have gone to trial." Id. Although Petitioner alleges that he would not have pleaded guilty if he had received different advice, his motion does not acknowledge that trial was the only other option he faced or affirmatively allege that he would have chosen to proceed to trial.

Furthermore, Petitioner cannot establish that it would have been objectively reasonable for him to proceed to trial if the advice of his attorney had been different. The case against him was strong and if he had not received the benefits of his plea agreement and had lost at trial, he risked a much higher sentence. First, evidence against Petitioner included his confession that he trafficked "100 pounds of marijuana per week for six months" and "1/2 kilogram plus 5 ounces of cocaine." (Crim. Case No. 3:13cr199, Doc. No. 44 at 5). Petitioner also admitted to possessing multiple firearms in connection with his drug-trafficking activity and armed robberies in which he had participated, and he handed one of his guns to law-enforcement officers. See (Id., Doc. No. 41-1 at 1, 3, 5; Doc. No. 41-2 at 4). The cash, drugs, firearms, and other physical evidence that officers discovered, along with Petitioner, when they searched Hamby's house, (id., Doc. No. 44 at 4), corroborate Petitioner's involvement with drug-trafficking and firearms. Additionally, the statements of Hamby and another witness who was present at the time of the

13

search, both of whom stated that Petitioner regularly distributed cocaine and marijuana to Hamby during a period of time in 2009, provide further corroboration. (Id. at 4-5).

Next, after pleading guilty—and notwithstanding his motion to withdraw—Petitioner received a three-offense-level adjustment for acceptance of responsibility under the United States Sentencing Guidelines. (Id., Doc. No. 58 at 15). As part of the plea agreement, the Government agreed not to pursue an information under 21 U.S.C. § 851, which spared Petitioner the risk of an increase of the mandatory-minimum prison sentence for his drug conspiracy from 10 to 20 years. (Id., Doc. No. 22 at 2). Perhaps most significantly, the Government agreed to dismiss an additional count under 18 U.S.C. § 924(c), which, if proved, would have exposed Petitioner to an additional twenty-five year, consecutive mandatory-minimum sentence. See 18 U.S.C. § 924(c)(1)(C)(i); Deal v. United States, 508 U.S. 129, 132 (1993).

In sum, regardless of what Petitioner's attorney told him (or did not tell him) about Hamby's statement, "proceeding to trial" would not "have been objectively reasonable in light of all of the facts." Fugit, 703 F.3d at 260. Petitioner received a sentence of only five months above the statutory mandatory minimum term for the offenses to which he pleaded guilty. If he had proceeded to trial and lost, he risked facing a mandatory minimum prison sentence more than three times as long as the sentence he received. The only realistic consequence of Petitioner's decision to plead guilty instead of going to trial is that he received a "shorter prison term than otherwise." Santiago, 2015 WL 9288220, at *4 (quoting Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012)). The decision to plead guilty, accordingly, "certainly did not prejudice" Petitioner, and he is not entitled to relief from his guilty plea. Id.

For the reasons stated herein, Petitioner's claim that his guilty plea was unknowing and involuntary is denied and dismissed.

**C. Petitioner's Claim of Ineffective Assistance of Appellate Counsel.**

Petitioner next contends that his appellate attorney was constitutionally deficient for omitting to challenge this Court's denial of Petitioner's motion to withdraw his guilty plea. This contention fails. First, the decision by Petitioner's attorney not to challenge on appeal this Court's denial of Petitioner's motion to withdraw his guilty plea was reasonable because a challenge to that decision would be meritless. This Court's application of the factors described by the Fourth Circuit in Moore was appropriate, and this Court acted well within its discretion when it concluded that Petitioner did not show a fair and just reason for requesting the withdrawal of his guilty plea. This Court properly found that Petitioner did not "offer credible evidence that his plea was not knowing or not voluntary." Moore, 931 F.2d at 248. As explained previously, the record contradicts Petitioner's assertions and confirms the voluntariness and intelligence of his plea. This Court also properly found that Petitioner did not credibly assert his legal innocence. See id. Petitioner identifies nothing in the record that would undermine this Court's finding based on the law enforcement interview reports that the parties filed when briefing Petitioner's motion to withdraw that Petitioner admitted trafficking large quantities of marijuana and other conduct consistent with what appeared in the presentence report. The Moore factor of "whether defendant has had close assistance of competent counsel" is assessed under the two-part standard for claims of ineffective assistance of counsel. See Bowman, 348 F.3d at 416 (citing Strickland, 466 U.S. at 688). As explained above, Petitioner has identified nothing that credibly establishes that his attorney advised him incorrectly or that he would have elected to proceed to trial had he received different advice.

In addition to properly finding that Petitioner's plea was knowing, voluntary, consistent with his actual guilt, and competently counseled, this Court properly counted Petitioner's delay

of nearly one year in moving to withdraw against him. (Crim. Case No. 3:13cr199, Doc. No. 58 at 3-4). The Fourth Circuit and other courts have held that significantly shorter delays may properly be weighed against defendants who move to withdraw guilty pleas. See, e.g., Moore, 931 F.2d at 248 (describing six weeks as a "long delay"); United States v. Davis, 529 F. App'x 375, 380 (4th Cir. 2013) (explaining that a district court "could count a delay of [almost two months] against a defendant"); United States v. Benton, 639 F.3d 723, 727 (6th Cir. 2011) ("This Court has declined to allow plea withdrawal when intervening time periods were as brief as one month."); United States v. Doe, 537 F.3d 204, 213 (2d Cir. 2008) ("[T]he fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily."); United States v. Vidakovich, 911 F.2d 435, 439 (10th Cir. 1990) ("The five-month delay between the entry of [the defendant's] pleas of guilty and his motion to withdraw suggests 'manipulation.'"). Petitioner has identified nothing in the record that his appellate attorney could have cited to undermine this Court's conclusion that "withdrawal [would have caused] prejudice to the government" in the light of Petitioner's delay and the age of the case. Moore, 931 F.2d at 248.

Next, the decision by Petitioner's attorney not to seek to vacate his guilty plea would have been strategically reasonable even if a meritorious challenge existed. Petitioner's guilty plea and the accompanying agreement were highly favorable, eliminating a significant risk that Petitioner would have been convicted at trial and faced a minimum sentence several times longer than the sentence that he ultimately received. A successful challenge to his guilty plea on appeal would have reinstated that risk. It was reasonable for Petitioner's appellate attorney to conclude that vacatur of Petitioner's guilty plea would probably do Petitioner more harm than good.

16

Truesdale v. Moore, 142 F.3d 749, 754 (4th Cir. 1998) (counsel not unreasonable for pursue a strategy with the potential to act as a double-edged sword).

Finally, Petitioner cannot establish the prejudice required to prevail on a theory of ineffective assistance of appellate counsel. Because this Court properly rejected his motion to withdraw his guilty plea, Petitioner has failed to establish a reasonable probability that "he would have prevailed on his appeal" had his attorney challenged that rejection. United States v. Rangel, 781 F.3d 736, 745 (4th Cir. 2015).

For the reasons stated herein, Petitioner's claim of ineffective assistance of appellate counsel fails.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 13, 2016

Robert J. Conrad, Jr.
United States District Judge